1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    DOROTHY MITCHELL,                    Case No. 19-cv-03249-JSC

8                Plaintiff,

9         v.                             **ORDER RE: CROSS MOTIONS FOR
                                         SUMMARY JUDGMENT**
10   ANDREW SAUL,
                                         Re: Dkt. Nos. 16 & 17
11               Defendant.

12       Plaintiff Dorothy M. seeks social security benefits for a combination of mental and

13   physical impairments, including back problems and posttraumatic stress disorder ("PTSD").

14   (Administrative Record ("AR") 251.)  Before the Court are Plaintiff's and Defendant's motions

15   for summary judgment.[1]  (Dkt. Nos. 16 & 17.)[2]  Because the Administrative Law Judge's

16   ("ALJ's") decision does contain reversible error, the Court GRANTS Plaintiff's motion for

17   summary judgment, DENIES Defendant's cross motion, and REMANDS for reconsideration

18   consistent with this Order.

19                                 **LEGAL STANDARD**

20       A claimant is considered "disabled" under the Social Security Act if she meets two

21   requirements.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

22   First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by

23   reason of any medically determinable physical or mental impairment which can be expected to

24   result in death or which has lasted or can be expected to last for a continuous period of not less

25   than 12 months."  42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be

26

27   [1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
     636(c).  (Dkt. Nos. 8 & 10.)
28   [2] Record citations outside of the administrative record are to material in the Electronic Case File
     ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity" ("RFC") the claimant can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if the ALJ does not apply proper legal standards." *Id.*

## BACKGROUND

### I.    Procedural History

Plaintiff applied for disability benefits under Title XVI of the Social Security Act in March 2016.[3] (AR 240.) The Commissioner denied Plaintiff's application on initial review in June 2016,

---

[3] Plaintiff filed a previous application for disability benefits that was denied by an ALJ in November 2014, and denied by the Appeals Council in February 2016. (*See* AR 20.) Plaintiff did not appeal the Appeals Council's denial, (AR 21); thus, the ALJ's November 2014 decision is not the subject of this Court's review.

and on reconsideration.  (AR 174-77, 181-87.)  Plaintiff then requested an administrative hearing

before an ALJ.  (AR 188.)  The hearing was held on October 17, 2017.  (AR 38.)  In May 2018,

the ALJ issued a decision denying Plaintiff's application, (AR 17-31), after which Plaintiff

requested review by the Appeals Council.  The Appeals Council denied Plaintiff's request.  (AR 1-

3.)  Plaintiff subsequently filed this action for judicial review pursuant to 42 USC §§ 405(g) and

1383(c)(3).  (Dkt. No. 1.)

## II.     Administrative Record

Plaintiff was born on February 10, 1963.  (AR 240.)  Plaintiff alleges that she has been

unable to work since March 14, 2016 because of her disability.[4]  (AR 41, 77.)  She has a

bachelor's degree and was previously employed as an accountant and bookkeeper; she last worked

in 2011.  (AR 45, 48-50, 1083.)

### A.     Medical Evaluations and Physician Statements

#### 1.     Opinions of Treating Physician Dr. Trinh

On February 14, 2017, Plaintiff was seen by Dr. Denise Trinh in connection with shoulder

pain and muscle spasms.  (AR 1307.)  Plaintiff self-reported that the symptoms caused by her

upper back and right shoulder pain were "moderate," and that symptoms caused by her muscle

spasms were "severe" and randomly occurring.  (*Id*.)  Further, Plaintiff experienced "several days"

of "[d]epression, feeling down, depressed or hopeless," as well as "back pain, neck pain, [and]

muscle cramps."  (AR 1309.)

On May 17, 2017, Dr. Trinh saw Plaintiff for a breast exam.  (AR 1295.)  Dr. Trinh noted

---

[4] Plaintiff's application for benefits alleges that she has been unable to work since November 5, 2014 due to her disability.  (AR 240.)  However, at the October 2017 hearing, Plaintiff's counsel requested to amend the alleged disability onset to the date of Plaintiff's application—March 14, 2016.  (AR 41, 77.)  The ALJ's decision reflects the amendment.  (*See* AR 20 ("Through her attorney at the hearing, the claimant requested to amend her alleged onset date to the date of the application, March 14, 2016.").)  Plaintiff's motion for summary judgment asserts that she "requested at the hearing that her onset date be amended to November 5, 2014 in light of agency rules."  (*See* Dkt. No. 16 at 4.)  This appears to be in error, however, because Plaintiff's motion also recognizes that "[t]he ALJ decision under review addressed the period of alleged disability beginning from the amended alleged onset date of March 14, 2016."  (*See id.* at 5.)  Defendant's briefing does not address this discrepancy.  Because an alleged onset date of either November 5, 2014 or March 14, 2016 does not appear material to the ALJ's decision, the Court recognizes the amended onset date of March 14, 2016.

1   during Plaintiff's exam that Plaintiff demonstrated a limp on her "right side," but that Plaintiff's

2   right foot showed "no swelling," was "full weight bearing" and required "no assistive device"

3   despite "moderate pain w[ith] motion." (AR 1297.) Dr. Trinh opined that Plaintiff's left foot was

4   "normal." (AR 1297.)

5          When Dr. Trinh saw Plaintiff on June 30, 2017, Dr. Trinh completed a Patient Health

6   Questionnaire in which Plaintiff self-reported as having "[l]ittle interest or pleasure in doing

7   things" and "[f]eeling down, depressed, or hopeless" for several days over the previous two

8   weeks. (AR 1251-52.) Plaintiff reported feeling the same during an examination with Dr. Trinh

9   on September 25, 2017. (AR 1203.) In connection with the September 27, 2017 examination, Dr.

10  Trinh additionally completed an assessment of Plaintiff's ability to do physical work-related

11  activities. (AR 1100.) In this assessment, Dr. Trinh opined that Plaintiff had chronic PTSD, and

12  "physical pain due to injury, anxiety[.]" (*Id.*) Dr. Trinh noted that Plaintiff had the ability to lift

13  and carry up to ten pounds for approximately one-third to two-thirds of an eight-hour day; could

14  stand and walk for approximately four hours of an eight-hour day; and could sit for less than two

15  hours during an eight-hour day. (AR 1101.) According to Dr. Trinh, Plaintiff was able to

16  occasionally twist, bend, crouch, and climb stairs or ladders. (AR 1102.) Plaintiff's abilities to

17  reach, handle, finger, feel, and push or pull objects were not negatively affected by her

18  impairments. (*Id.*) Dr. Trinh noted that Plaintiff's PTSD would cause her to be absent less than

19  once a month from work, but that Plaintiff's impairments would interfere with her ability to

20  concentrate for approximately 50% of the workday. (AR 1104.)

21         Dr. Trinh, together with treating Licensed Clinical Social Worker ("LCSW") Marike

22  Seemann completed and signed a mental health questionnaire with Plaintiff in September 2017.

23  (AR 1092-1098.) In this questionnaire, Dr. Trinh and Seemann diagnosed Plaintiff with "chronic

24  PTSD, and noted that Plaintiff had responded "very well to treatment." (AR 1092.) According to

25  Dr. Trinh and Seemann, Plaintiff's difficulty sleeping and difficulty managing her low mood

26  "[had] improved but continue[d] to disturb her life." (*Id.*) Plaintiff displayed moderate[5] to

27  _____

28  [5] The questionnaire defines a "moderate limitation" as one that is "more than mild, but less than
    marked, and would be expected to preclude performance by 20% in an 8 hour work day." (AR

United States District Court
Northern District of California

United States District Court
Northern District of California

1    marked[6] limitations in her abilities to execute work-like procedures, as well as her ability to

2    remember instructions of varying complexity.  (AR 1094.)  Plaintiff likewise showed moderate to

3    marked limitations in her ability to carry out instructions, perform work on a schedule, or

4    "complete [a] normal workday and workweek uninterrupted by psychologically based

5    symptoms[.]"  (AR 1095.)  Dr. Trinh and Seemann noted that Plaintiff's disorder was of "at least 2

6    years' duration[.]"  (AR 1096.)  They estimated that Plaintiff would be absent from work

7    approximately four days per month, and would be "off-task" for 30% of an 8-hour work day.  (AR

8    1097.)  At the time of the questionnaire's completion, Dr. Trinh and Seemann believed Plaintiff

9    last used drugs or alcohol one year prior.  (*Id.*)

10                       **2.      Consultative Physician Dr. Robert Tang**

11            On May 13, 2016, Plaintiff was seen by Dr. Robert Tang, who conducted a physical

12    examination in connection with Plaintiff's application for benefits.  (AR 591.)  Dr. Tang noted

13    Plaintiff's complaints of back pain due to degenerative disc disease and a treatment history that

14    included physical therapy, chiropractic services, and pain medication.  (*Id.*)  Plaintiff self-reported

15    that "[s]he is fully able to care for her personal needs[,]" and "can episodically complete house

16    chore duties."  (*Id.*)  Dr. Tang noted that Plaintiff was "able to walk in the exam room without

17    difficulty" and without an assistive device, but that she had "a softer right step."  (AR 592.)

18    Further, Plaintiff could sit comfortably and "get on and off the examination table without any

19    problems."  (*Id.*)

20            On examination, Plaintiff was "[u]nable to tandem walk" due to her "softer right step/hip"

21    and was "also unable to toe-heel stand."  (*Id.*)  Dr. Tang found full motor strength in all

22    extremities, but "[g]uarded" range of motion in the lumbar region and hip joints.  (AR 593.)

23    Straight leg tests were negative.  (*Id.*)  Dr. Tang opined that Plaintiff had "some decrease in

24    physical function" due to her back and hip problems, with the following work-related physical

25    limitations:

26

27    ──────────────
      1094.)

28    [6] The questionnaire defines a "marked limitation" as one that is "more than moderate, and would
      be expected to preclude performance by more than 20% in an 8 hour work day." (AR 1094.)

> With maximum allowable breaks, the claimant can stand and walk up to six hours. The claimant can sit without limitations. The claimant does not use an assistive device. The claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently. The claimant is capable of climbing occasionally, balancing occasionally, stooping occasionally, kneeling occasionally, crouching occasionally, and crawling occasionally. The claimant is capable of reaching without limitations, handling without limitations, fingering without limitations, and feeling without limitations.

(AR 594.) Dr. Tang concluded that while Plaintiff was limited in her ability to work "at heights," "around heavy machinery," and "around dust, fumes, and gasses," she had no limitations working "around extremes of temperature." (*Id.*) Dr. Tang determined that Plaintiff was not limited in her ability to work around chemicals or "excessive noise." (*Id.*)

### 3.    Evaluation by Physician Dr. Michael Tseng

On September 8, 2016, Plaintiff was examined by orthopedic specialist Dr. Michael Tseng in connection with complaints of lumbar pain. (AR 1069.) Dr. Tseng noted Plaintiff's complaints of "long-standing back and right leg pain," and treatment history consisting of physical therapy, acupuncture, chiropractic services, and "extensive medication." (*Id.*) On examination, Dr. Tseng noted normal gait and no difficulty "[h]eel walking." (AR 1069) Dr. Tseng found full range of motion in Plaintiff's spine but noted some pain with motion. (*Id.*) Dr. Tseng also noted guarded range of motion in the right hip. (*Id.*) Straight leg tests were negative bilaterally. (*Id.*)

Plaintiff presented "chronic appearing bilateral L5 pars defects." (AR 1068.) X-rays indicated "[m]oderate L5-S1 disc height narrowing," and "[l]ikely broad-based L5-S1 disc bulge." (AR 1070.) Dr. Tseng diagnosed Plaintiff with "unstable L5-S1 isthmic spondylolisthesis" and "[l]ikely spinal stenosis with neurogenic claudication right L5 distribution." (*Id.*) Dr. Tseng opined, in pertinent part:

> Her imaging demonstrates unstable L5-S1 isthmic spondylolisthesis. I suspect that there is significant stenosis there. At this point I will obtain MRI of lumbar spine to get a definitive diagnosis. She has failed conservative management to this point includ[ing] physical therapy, chiropractic, acupuncture, medications. She [has] a lot of difficulty walking. I suspect she would be a candidate for L5-S1 anterior or posterior spinal fusion. She may also consider epidural steroid injection, however[,] given her significant instability, I suspect that relief from this would be temporary.

(*Id.*)

### 4.    Opinion of Treating Psychologist Dr. Adrian James

On November 28, 2016, Plaintiff's treating psychologist Dr. Adrian James signed a Mental Impairment Questionnaire prepared by treating LCSW Marike Seemann.  (AR 1079.)  The questionnaire notes that Plaintiff was treated at the West Oakland Health Council for mental health issues ten times since February 2016, and diagnosed with chronic PTSD.  (AR 1074.)  The questionnaire also notes that Plaintiff received individual and "talk" therapy and been prescribed trazadone and bupropion for her PTSD.  (*Id.*)  Further, the questionnaire states that Plaintiff's PTSD exacerbates her physical symptoms because "isolation leads to decreased mobility [and] increased body pain."  (AR 1076.)

LCSW Seemann and Dr. James noted the following "marked" limitations[7] in areas of work-related functioning due to Plaintiff's mental health condition: "[a]bility to remember locations and work-like procedures," "ability to understand and remember detailed instructions," "ability to carry out detailed instructions," "ability to perform activities within a schedule," "ability to work with or near others without being distracted by them," "ability to accept instructions and respond appropriately to criticism from supervisors," "ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes," "ability to respond appropriately to changes in the work setting," and "ability to be aware of normal hazards and take appropriate precautions."  (AR 1076-78.)  The questionnaire also noted "marked" limitations based on "[d]ifficulties in maintaining social functioning" and "[d]ifficulties in maintaining concentration, persistence or pace."  (AR 1078.)

LCSW Seemann and Dr. James noted "extreme" limitations[8] in the "ability to maintain attention and concentration for a two-hour segment," "ability to complete normal workday and workweek uninterrupted by psychologically based symptoms [and] perform at consistent pace without an unreasonable number/length of rest periods," and "ability to travel in unfamiliar places or use public transportation."  (AR 1076-77.)  The questionnaire also notes that Plaintiff would

---

[7] The questionnaire defines a "marked limitation" as one that "would be expected to preclude performance by more than 20% in an 8 hour work day."  (AR 1076.)
[8] The questionnaire defines "extreme limitation" as one that results in "almost no useful ability to function."  (AR 1076.)

miss "5 days or more [of work] per month," and be "precluded from performing her job" at least 30% of an 8-hour work day.  (AR 1079.)  Finally, the questionnaire notes that Plaintiff "has been clean and sober for 6 months and continues to struggle with symptoms of depression and anxiety." (*Id.*)

### 5.   Opinion of Examining Psychologist Dr. Laura Catlin

Dr. Laura Jean Catlin examined Plaintiff on June 29, 2017 and issued a Psychological Disability Evaluation Report in connection with Plaintiff's application for benefits.  (AR 1081-82.)  Dr. Catlin conducted a clinical interview, mental status examination, administered tests specific to PTSD and depression, and reviewed Plaintiff's medical treatment records.  (*Id.*)  Plaintiff reported symptoms of "severe anxiety, depression, and PTSD" stemming from a relationship in which she was emotionally and physically abused; the relationship ended in 2015 when Plaintiff "moved into a battered women's shelter."  (AR 1082-83.)  Plaintiff also reported "severe back and neck pain" stemming from a motor vehicle accident.  (AR 1082-83.)

On examination Plaintiff "appeared alert and oriented," engaged, "and able to sustain her attention."  (AR 1083.)  However, Plaintiff "had difficulty maintaining appropriate eye contact," "appeared nervous[,] and was restless and fidgety in her chair."  (AR 1084.)  Plaintiff's mood and affect were "depressed and anxious."  (*Id.*)  Plaintiff "walked with an adequate gait and sat with an adequate posture."  (*Id.*)

Dr. Catlin opined that Plaintiff's "concentration was very poor," and Plaintiff had "impairments in her immediate and delayed memory."  (*Id.*)  According to a neurocognitive exam, Plaintiff's "Delayed Memory Index" was in the "Low Average" range; overall, however, Dr. Catlin opined that Plaintiff's exam performance indicated an "ability to learn new information and require[d] some practice and repetition to do so."  (AR 1085.)  A separate inventory indicated that Plaintiff was "experiencing many symptoms of PTSD."  (AR 1086.)

Dr. Catlin concluded from her assessment that Plaintiff suffered from major depressive disorder, PTSD, alcohol use disorder "in full remission[,]" chronic back pain, and that Plaintiff had "other problems related to employment."  (AR 1087.)  "Overall, the claimant's physical and mental health symptoms will make performing in the work place very difficult."  (AR 1088.)  Dr.

Catlin opined that Plaintiff displayed marked to extreme impairments in her ability to execute many workplace functions.  (AR 1088-1089).  Based on this assessment, Dr. Catlin concluded that Plaintiff's impairments would "cause her to be absent from work more than four days a month[,]" that Plaintiff was "unable to engage in any meaningful employment and would not be able to obtain or retain a job."  (AR 1090.)  Dr. Catlin noted that Plaintiff's condition would persist for at least twelve months after the June 29, 2017 examination.  (*Id.*)

### 6.    Non-Examining State Agency Physicians

In September 2016, several non-examining state agency physicians reviewed Plaintiff's medical evidence at the reconsideration level.  State agency medical consultant S.M. Niknia, M.D., affirmed a prior state agency physician who determined that, at the reconsideration state, Plaintiff "denie[d] worsening and new impairments."  (AR 159.)  Dr. Niknia "reviewed [Plaintiff's] case and agree[d] with the RFC."  (*Id.*)  That same month, state agency psychological consultant Randall J. Garland, Ph.D., reviewed Plaintiff's prior assessments and concluded that Plaintiff had a medically determinable impairment.  (*Id.*)  However, Dr. Garland noted that "on appeal[,] [Plaintiff] did not allege worsening or new psyc[hological] condition[s]" and adopted the prior assessment regarding Plaintiff's ability to complete unskilled work.  (AR 160; 166.)

### B.    The ALJ's Decision

On May 2, 2018, the ALJ issued a written decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Social Security Act based on the testimony, evidence, and the Social Security Administration's five-step sequential evaluation process for determining disability.  (AR 17.)

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since March 14, 2016, the date of her disability benefits application.  (AR 23.)

At step two, the ALJ concluded that the objective medical evidence indicated that Plaintiff's "degenerative disc disease, polysubstance abuse (alcohol and cocaine) possibly in remission, and cardiomyopathy" constitute "severe impairments."  (*Id.* (citing 20 C.F.R. § 416.920(c)).)  The ALJ further determined that Plaintiff's mental impairments of "PTSD with depressive and anxious features" were not severe impairments "that significantly limited her

1  ability to perform basic work activities." (AR 23-24.)

2      In evaluating Plaintiff's mental impairments, the ALJ discussed Plaintiff's mental health

3  treatment history since her March 2016 application for benefits, and determined that Plaintiff "had

4  a medically determinable mental impairment" but Plaintiff "did not prove that she had any

5  limitations in the ability to understand, remember, or apply information or interact with others."

6  (AR 24-25 (citing section 12.00C of the Listing of Impairments (20 C.F.R., Part 404, Subpart P,

7  Appendix 1)).) The ALJ further determined that Plaintiff's treatment history demonstrated only

8  "mild difficulties in the ability to concentrate, persist, or maintain pace and in the ability to adapt

9  or manage oneself." (AR 25.) Based on these findings, the ALJ concluded that Plaintiff's

10  "medically determinable mental impairment was not proven to cause more than mild limitations in

11  any of the functional areas," and was therefore non-severe. (*Id.* (citing 20 C.F.R. §

12  404.1520a(d)(1)).)

13      At the third step, the ALJ concluded that Plaintiff "does not have an impairment or

14  combination of impairments that meets or medically equals the severity of one of the listed

15  impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AR 26 (citing 20 C.F.R. §§

16  416.920(d), 416.925, 416.926).) In reaching that conclusion, the ALJ first considered listing 1.04

17  for Plaintiff's "lumbar degenerative disc disease," and found no evidence of:

18          compromise of a nerve root or the spinal cord, with evidence of nerve
            root compression characterized by neuroanatomic distribution of
19          pain, limitation of motion of the spine, motor loss accompanied by
            sensory or reflex loss and, if there is involvement of the lower back,
20          positive straight-leg raising test; or spinal arachnoiditis, manifested
            by severe burning or painful dysesthesia, resulting in the need for
21          changes in position or posture more than once every two hours; or
            lumbar spinal stenosis resulting in pseudoclaudication, manifested by
22          chronic nonradicular pain and weakness, and resulting in an inability
            to ambulate effectively.
23

24  (AR 26.) The ALJ noted that although one physician "suspected claudication[,] . . . it was not

25  proven." (*Id.*) Further, Plaintiff "consistently was found to have negative straight-leg raising tests

26  and she consistently was found with a normal gait." (*Id.*) The ALJ next considered Plaintiff's

27  "cardiomyopathy within the context of Section 4.00 of the listings but did not find signs and

28  symptoms consistent with those requirements." (*Id.*)

United States District Court
Northern District of California

In between steps three and four, the ALJ considered Plaintiff's RFC and concluded that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R § 416.967(b) (i.e., "lift and carry 10 pounds frequently and 20 pounds occasionally; sit, stand, or walk for six hours each in an eight-hour workday, and push/pull to the same weight limits").  (*Id.*)  The ALJ also noted the following limitations: "she occasionally could balance, stoop, kneel, crouch, and crawl.  She occasionally could work at unprotected heights, around moving mechanical parts, and in environments with dust, odors, fumes, and other pulmonary irritants."  (*Id.*)

In making that determination the ALJ found that Plaintiff's "medically determinable impairments reasonably could be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 27.)  The ALJ discussed Plaintiff's subjective symptom testimony in relation to the objective medical evidence, including X-rays and physical examination findings, and Plaintiff's self-reported activities of daily living.  (AR 27-30.)

As for the medical opinion evidence, the ALJ afforded "great evidentiary weight" to the opinion of Dr. Tang, who found that Plaintiff could perform work at the light level, because his opinion was "the most consistent with the record."  (AR 28-29.)  The ALJ further noted that Dr. Tang's opinion was supported by the examination results from Dr. Tseng.  (AR 28 ([Dr. Tseng's] observation about normal gait, range of motion, and so on are quite similar to those of Dr. Tang and support his conclusions.").)

The ALJ discussed Dr. Trinh's comments regarding Plaintiff's impairments. (AR 29 ("Dr. Trinh believed [Plaintiff] could lift and carry 10 pounds, stand and walk for four hours, and sit for less than two hours in an eight-hour workday.").)  "However, [Dr. Trinh] also thought that [Plaintiff's] symptoms such as pain would interfere with her concentration or pace about 50 percent of the workday."  (*Id.*)  Because Dr. Trinh only "occasionally" saw the Plaintiff, and there was "no indication that Dr. Trinh [was] familiar with the Social Security program requirements or that she is a specialist in orthopedic medicine[,]" the ALJ accorded "little weight" to Dr. Trinh's opinion.  (*Id.*)

Based on Plaintiff's evidence of severe but stable back pain and Dr. Tang's medical opinion evidence, the ALJ determined that Plaintiff "proved she ha[d] severe impairments that result[ed] in significant functional limitations." (AR 29.) Because Plaintiff self-reported to Dr. Tang that she could "do volunteer accounting work" and "participate in AA meetings[,]" and had reported that she could take care of other routine tasks, the ALJ determined that Plaintiff's "daily activities [were] generally consistent with the ability to perform light work[.]" (AR 29-30.)

At step four, the ALJ cited the Vocational Expert's testimony that a hypothetical claimant with Plaintiff's RFC could perform Plaintiff's past relevant work as an accounting clerk and bookkeeper. (AR 30.) The ALJ concluded that such work "does not require the performance of work-related activities precluded by [Plaintiff's RFC]," and Plaintiff was therefore "able to perform past relevant work as actually or generally performed." (*Id.*) Thus, the ALJ did not reach step five and determined that Plaintiff "has not been under a disability, defined in the Social Security Act, since March 14, 2016." (*Id.* (citing 20 C.F.R. § 416.920(f)).)

## DISCUSSION

The parties dispute whether the ALJ erred in: (1) evaluating the medical opinion evidence; (2) evaluating Plaintiff's medically determinable impairments at steps two and three; (3) evaluating Plaintiff's RFC; (4) applying the Medical Vocational Guideline 202.04/202.06; and (5) evaluating the vocational expert's testimony.

## I.    Medical Opinion Evidence

### A.    Legal Standard

In assessing an ALJ's consideration of the medical opinion evidence, courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

United States District Court
Northern District of California

United States District Court
Northern District of California

An ALJ may reject the "uncontradicted opinion of a treating or examining doctor" only by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks and citation omitted).  And "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (citation omitted).  That said, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("[T]o the extent that [the nontreating physician's] opinion rests on objective clinical tests, it must be viewed as substantial evidence.") (alterations in original).  Likewise, the opinions of nonexamining physicians may "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id.*  Ultimately, "[t]he ALJ must do more than offer his conclusions" when rejecting a medical opinion; instead, she "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).  Thus, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

Plaintiff asserts that the ALJ erred in evaluating the opinions of Dr. Trinh, Dr. James, and Dr. Catlin.

//

//

**B.  The ALJ's Analysis**

    **1.    Opinions of Dr. Trinh**

The ALJ gave "little weight" to the opinion of Dr. Trinh, Plaintiff's treating physician, regarding Plaintiff's physical medical issues.  (AR 28-29.)  Similarly, the ALJ assigned "little evidentiary weight" to a mental health questionnaire Dr. Trinh signed regarding Plaintiff's PTSD and the work-related limitations it imposed.  (AR 25.)

Dr. Trinh's opinions regarding Plaintiff's physical medical issues were contradicted by other medical opinion evidence offered by Dr. Tang and Dr. Tseng, namely that Plaintiff had a "negative (normal) straight leg raising test," "normal motor strength," and that her "heel walking was normal." (AR 25.)  Accordingly, the ALJ was required to provide "'specific and legitimate reasons' supported by substantial evidence in the record" for discounting Dr. Trinh's opinions regarding Plaintiff's physical medical issues.  *See Lester*, 81 F.3d at 830 (citation omitted). As is explained below, the ALJ did so.

Dr. Trinh's opinions regarding Plaintiff's mental health and PTSD were contradicted by other evidence, namely inconsistences in Plaintiff's treatment history and the opinion of state agency reviewing psychologist Randall J. Garland, Ph.D., that Plaintiff could perform "simple, repetitive work." (AR 24-25; 160.)  However, as explained below, the ALJ did not provide "'specific and legitimate reasons' supported by substantial evidence in the record' for assigning Dr. Trinh's opinions regarding Plaintiff's mental health and PTSD "little evidentiary weight." *See Lester*, 81 F.3d at 830 (citation omitted).

    **a.  Dr. Trinh's Physical Assessment**

The ALJ discounted Dr. Trinh's September 27, 2017 medical source statement because it was contradicted by the opinions of Dr. Tang and Dr. Tseng.  The ALJ noted Dr. Trinh's belief that Plaintiff could "sit for less than two hours in an eight-hour workday" and would need to "alternate sitting with standing every 15 minutes" was contradicted by Dr. Tang's determination that Plaintiff could "sit, stand, or walk for six hours each in an eight-hour workday[.]"  (AR 28-29.)  Dr. Trinh's opinion regarding Plaintiff's back injury and limited ability to walk was further contradicted by Dr. Tang's determination that Plaintiff had a "negative (normal) straight leg

raising test" and "normal motor strength," and Dr. Tseng's opinion that Plaintiff's "heel walking was normal." (AR 28-29.)

Dr. Tang formed his opinion after conducting a physical examination of Plaintiff, and found she could stand and walk up to six hours. (AR 591; 594). When "the opinion of the claimant's treatment physician is contradicted, and the opinion of the nontreating source is based on clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F.3d at 1041. While Dr. Tseng opined that Plaintiff had "difficulty walking," he additionally noted that her straight leg tests were negative bilaterally, she had a normal gait, and that her "heel walking was normal." (AR 1069-1070.) Additionally, the ALJ noted that Dr. Tseng observed Plaintiff's "[r]ange of motion of the lumbar spine was normal[.]" (AR 29.) For these reasons the ALJ found that Dr. Tseng's medical opinions supported those of Dr. Tang. *See Thomas*, 278 F.3d at 947 (stating that the opinions of nonexamining physicians may "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

Because Dr. Tang formed his opinions regarding Plaintiff's physical medical issues after conducting independent clinical examinations, and his opinion is consistent with other evidence in the record, his opinion constitutes substantial evidence. The ALJ determined that Dr. Tang's opinion regarding Plaintiff's physical medical issues was "consistent with the clinical signs observed in his examination of the claimant" as well as "those observed by Dr. Tseng," and subsequently discounted Dr. Trinh's opinion that Plaintiff could not sit for longer than two hours and "would need to alternate sitting with standing every 15 minutes[.]" (AR 29.) This constitutes a "specific and legitimate reason" for discounting Dr. Trinh's opinion. *See Lester*, 81 F.3d at 830 (citation omitted). Therefore, the ALJ did not commit legal error in assigning "little weight" to Dr. Trinh's medical opinion regarding Plaintiff's physical medical issues.

**b. Dr. Trinh's Mental Assessment**

On September 25, 2017, Dr. Trinh completed a mental health questionnaire regarding Plaintiff's PTSD and work-related limitations. (AR 1092.) The ALJ disregarded Dr. Trinh's

opinions in the questionnaire that Plaintiff suffered "moderate" to "marked" work-related functional limitations for three main reasons. (AR 24-25.) First, Dr. Trinh's opinions regarding Plaintiff's functional limitations were discounted because Dr. Trinh inconsistently noted in the questionnaire that Plaintiff had responded "very well to treatment." (AR 1092.) Second, the ALJ noted Plaintiff's treatment notes from West Oakland Health Counsel demonstrated her symptoms had been improving, and that this improvement contradicted Dr. Trinh's opinions in the questionnaire regarding Plaintiff's mental health. (AR 24.) Third, Randall J. Garland, Ph.D., stated that Plaintiff could perform "simple, repetitive work," which the ALJ held contradicted Dr. Trinh's opinion in the questionnaire that Plaintiff had "moderate" to "marked" functional limitations in her ability to complete work-related tasks. (AR 24-25; 1094-1097.)

The ALJ found the inconsistencies in Dr. Trinh's mental health questionnaire presented a basis for assigning Dr. Trinh's opinions in the questionnaire "little evidentiary weight." (AR 25.) However, a treating physician's "statements must be read in context of the overall diagnostic picture [she] draws." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). "That a [Plaintiff] . . . makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Id.* Dr. Trinh noted that Plaintiff was responding well to treatment in the September 25, 2017 questionnaire, but also noted that: Plaintiff's PTSD symptoms "continue to disturb her life;" Plaintiff had "moderate" to "marked" work-related functional limitations; Plaintiff's impairments would cause her to be absent from work "about 4 days per month;" and that while at work Plaintiff's limitations would cause her to be "off-task" for "[m]ore than 30%" of "an 8-hour work day." (1092-1097.) Thus, the ALJ failed to consider Dr. Trinh's "overall diagnostic picture" and the work-related functional limitations it articulated. *See Holohan*, 246 F.3d at 1205.

Similarly, the ALJ selected various treatment notes from Plaintiff's psychotherapy visits at West Oakland Health Counsel that state she at certain dates felt "more in control and less forgetful," and that some treatment notes "indicat[ed] that the [Plaintiff] had been doing well" and "had made new friends at school." (AR 24.) In September 2017, Plaintiff reported "feeling stable and in a good mood but tired because she had been working hard at school." (*Id.*)

1    Where an ALJ is "selective in his reliance" on treatment notes that reject a physician's

2    opinion concerning "the scope of a [Plaintiff's] limitations," the plaintiff's argument that an ALJ

3    "committed legal error . . . has merit." *Holohan*, 246 F.3d at 1205.  Furthermore, Dr. Trinh's

4    treatment notes throughout Plaintiff's treatment at West Oakland Health Counsel are consistent

5    with her opinion in the September 25, 2017 questionnaire.  On June 30, 2017, Dr. Trinh noted that

6    Plaintiff had been bothered for "several days" during the previous two weeks by "feeling down,

7    depressed or hopeless" and having "little interest or pleasure in doing things."  (AR 1251-52.)

8    While Plaintiff's treatment notes from August and September 2017 indicate she was "doing very

9    well in school" and began to feel stable, Dr. Trinh's September 25, 2017 treatment notes state that

10    Plaintiff was "feeling down, depressed or hopeless (several days), [and had] [l]ittle interest or

11    pleasure in doing things (several days)."  (AR 24; 1202-03.)  In June 2016, LCSW Seemann

12    described Plaintiff's "[symptoms] of PTSD" as "ongoing."  (AR 959.)  Therefore, there is

13    evidence that the results of Dr. Trinh's questionnaire are consistent with Plaintiff's treatment notes

14    from West Oakland Health Counsel.

15    Defendant's insistence that the ALJ properly adopted Dr. Garland's administrative medical

16    finding that Plaintiff could complete simple work tasks over Dr. Trinh's opinion that Plaintiff had

17    "moderate" to "marked" functional limitations in her ability to complete work-related tasks is not

18    persuasive.  (AR 1094-1097.)  The ALJ actually *rejected* Dr. Garland's opinion (which adopted

19    the opinion of Judge Lisewski) that Plaintiff suffered severe mental impairments.  (AR 24.)   It

20    follows then that Dr. Garland's report cannot satisfy the ALJ's burden to provide "specific,

21    legitimate reasons" for crediting the opinions of non-examining psychologists over treating

22    physicians.  *See Nguyen v. Chater*, 100 F.3d 1462, 1464-1465 (9th Cir. 1996).

23    **2.    Opinions of Dr. James**

24    In affording little weight to Dr. James's November 28, 2016 mental health questionnaire,

25    which addressed Plaintiff's PTSD and functional limitations, the ALJ noted that the opinion

26    expressed in Dr. James's questionnaire was "not consistent with the treatment records and can be

27    assigned no evidentiary weight."  (AR 25.)  The ALJ's determination to assign Dr. James's

28    opinion *no* evidentiary weight is not supported by substantial evidence; specifically, Plaintiff's

United States District Court
Northern District of California

17

prior medical records from West Oakland Health Counsel do not provide "specific and legitimate reasons" for rejecting Dr. James's medical opinion as Plaintiff's treating psychologist.  *See Lester*, 81 F.3d at 830 (citation omitted).

Dr. James's questionnaire stated Plaintiff suffered marked limitations in many areas of work-related functioning, including the "[a]bility to remember locations and work-like procedures[.]"  (AR 1076.)  Dr. James noted extreme limitations in Plaintiff's "ability to maintain attention and concentration for a two-hour segment," as well as in Plaintiff's "ability to complete [a] normal workday and workweek uninterrupted by psychologically based symptoms [and] perform at consistent  pace without an unreasonable number/length of rest periods[.]"  (AR 1076-77.)  Dr. James further noted that Plaintiff would miss "5 days or more [of work] per month," and be "precluded from performing her job" at least 30% of an 8-hour work day.  (AR 1079.)

Select evidence of Plaintiff's psychotherapy visits to West Oakland Health Counsel does not provide specific or legitimate reasons for rejecting Dr. James's assessment.  The ALJ emphasized Plaintiff's June 9, 2016 treatment notes, which state Plaintiff was in a "better [and] more stable mood."  (AR 957.)  However, the ALJ conceded that during this same medical appointment "[t]here was some evidence [Plaintiff] continued to have some PTSD-type symptoms, such as fear issues and frightening dreams."  (AR 24.)  Therefore, despite a notation regarding Plaintiff's improved mood, Plaintiff's June 9, 2016 treatment notes support rather than refute Dr. James's opinion that Plaintiff's PTSD presented functional limitations.  The ALJ additionally cites treatment notes from September 19, 2017, "near the end of [Plaintiff's] therapy," as evidence of Plaintiff's stability and good mood.  (AR 24.)  These notes retain Plaintiff's diagnosis with "Post-traumatic stress disorder, chronic."  (AR 1208.)  During a September 26, 2017 medical appointment, Plaintiff's treatment notes indicate that she was "feeling down, depressed or hopeless (several days), [with] [l]ittle interest or pleasure in doing things (several days)."  (AR 1203).

While Plaintiff may have been "doing very well in school," (AR 1231), this progress on its own is insufficient to accord Dr. James's medical opinion *no* evidentiary weight.  Further, as the September 26, 2017 notes confirm, Plaintiff's treatment was not so obviously successful as to

United States District Court
Northern District of California

1    accord Dr. James's medical opinion regarding her work-related functional limitations *no* weight.

2    Therefore, Plaintiff's treatment notes from June 2016 to approximately September 2017 do not

3    offer specific or legitimate reasons for the ALJ rejecting entirely Dr. James's medical opinion.

### 3.   Opinions of Dr. Catlin

5    On June 29, 2017, Dr. Laura Catlin, Psy.D., examined Plaintiff.  (AR 1081.)  On June 30,

6    2017, Dr. Catlin prepared a psychological evaluation report regarding Plaintiff's examination.

7    (AR 1081.)  The ALJ noted that in her report, Dr. Catlin assessed Plaintiff as having "marked to

8    extreme impairments in all aspects of work-related activity."  (AR 25.)  Because Dr. Catlin's

9    assessment was "not supported by her own observations and [was] at odds with treatment records"

10   from West Oakland Health Counsel "showing [Plaintiff] was doing well," the ALJ assigned "no

11   weight" to Dr. Catlin's medical opinion.  (AR 25; 1081.)

12   The ALJ correctly determined that Dr. Catlin's assessment was at odds with Plaintiff's

13   treatment records.  While Plaintiff's treatment records provide support for treating physician Dr.

14   Trinh's determination that Plaintiff held moderate to marked work-related functional impairments

15   as a result of her mental health and PTSD, they do not provide support for the opinion of Dr.

16   Catlin, a non-treating physician, that Plaintiff suffered marked to *extreme* functional impairments.

17   (AR 1088-90.)  *See Orn*, 495 F.3d at 631 ("[T]he opinions of examining non-treating physicians

18   are afforded less weight than those of treating physicians."). This heightened characterization of

19   Plaintiff's functional limitations is without "substantial support from the primary treating records."

20   (AR 25.)  "The ALJ need not accept the opinion of any physician . . . if the opinion is brief,

21   conclusory, and inadequately supported by clinical findings."  *Thomas*, 278 F.3d at 957.  Because

22   Dr. Catlin's opinion is not adequately supported by clinical findings, the ALJ committed no legal

23   error by discounting Dr. Catlin's assessment because of Plaintiff's conflicting treatment records.

### II.   Medically Determinable Impairments

#### A.  The ALJ's Step Two Analysis

26   At the second step, the ALJ has to determine whether the claimant has a "severe medically

27   determinable physical or mental impairment" or combination of impairments that has lasted for

28   more than 12 months.  20 C.F.R. § 416.920(c).  The step two inquiry for severity is intended to be

1    a "de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d at

2    1290.  "An impairment or combination of impairments can be found not severe only if the

3    evidence establishes a slight abnormality that has no more than a minimal effect on an individual's

4    ability to work." *Id*. (internal quotation marks and citations omitted).

5            The ALJ found that Plaintiff had a "medically determinable mental impairment," but that

6    Plaintiff's mental impairment failed to meet any criteria "set out in the disability regulations for

7    evaluating mental disorders[.]"  (AR 25.)  Given that the ALJ erred in devaluing the medical

8    opinions of Dr. Trinh and Dr. James, the ALJ was also incorrect in failing to consider the severity

9    of Plaintiff's PTSD.  As the step two inquiry is intended to be a "de minimis screening device to

10   dispose of groundless claims," the ALJ erred in not considering the substantial evidence relating to

11   Plaintiff's PTSD.  *Smolen*, 80 F.3d at 1290.

12           **B.  The ALJ's Step Three Analysis**

13               **1.  Listing 1.04**

14           Plaintiff also argues that the ALJ erred in finding Plaintiff does "not have an impairment or

15   combination of impairments that meets or medically equals the severity of one of the listed

16   impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  (AR 26 (citing 20 C.F.R. §§

17   416.920(d), 416.925, 416.926).)  "If a claimant has an impairment or combination of impairments

18   that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is

19   presumed disabled at step three, and the ALJ need not make any specific finding as to his or her

20   ability to perform past relevant work or any other jobs." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th

21   Cir. 2001) (citing 20 C.F.R. § 404.1520(d)).  "To equal a listed impairment, a claimant must

22   establish symptoms, signs and laboratory findings at least equal in severity and duration to the

23   characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to

24   the listed impairment most like the claimant's impairment." *Tackett*, 180 F.3d at 1099 (internal

25   quotations omitted) (emphasis removed); 20 C.F.R. § 404.1526.

26           The ALJ's conclusion that Plaintiff's "lumbar degenerative disc disease" did not meet the

27   requirements of Listing 1.04 relied in part on Dr. Tseng's "suspected" but "not proven"

28   claudication.  (AR 26.)  Dr. Tseng found full range of motion in Plaintiff's spine, even if he noted

United States District Court
Northern District of California

20

some pain with motion.  (AR 1069.)  Furthermore, Plaintiff's straight leg tests were negative

bilaterally.  (*Id.*)  Dr. Tseng further determined that, while Plaintiff had "difficulty walking," she

had a normal gait, and that her "heel walking was normal."  (AR 1069-1070.)  Therefore, medical

evidence properly sustains the ALJ's finding that Plaintiff did not meet the requirements in Listing

1.04.  The ALJ did not commit legal error in concluding Plaintiff did not have "signs or symptoms

consistent with those requirements."  (AR 26.)

### 2.   Listings 12.04, 12.05, 12.06, and 12.15

The ALJ summarily found that Plaintiff did not meet the requirements for the "four broad

areas of mental functioning set out in the disability regulations for evaluating mental disorders[.]"

(AR 25.)  Because the ALJ neglected to consider the opinions of Dr. Trinh and Dr. James

regarding Plaintiff's mental health and PTSD, it follows that the ALJ failed to properly evaluate

the medical evidence in determining that Plaintiff did not suffer any impairment under these

Listings.  Similarly, the ALJ failed to provide any evidentiary support for the conclusion that

Plaintiff failed to prove "she had any limitations in the ability to understand, remember, or apply

information or interact with others; and she demonstrated mild difficulties in the ability to

concentrate, persist, or maintain pace and in the ability to adapt or manage oneself."  (AR 25.)  For

these reasons, the ALJ committed legal error in his evaluation of Plaintiff under these Listings.

### III.   Plaintiff's Residual Functional Capacity

The "Medical-Vocational Guidelines" of the Social Security regulations define RFC as

"the maximum degree to which the individual retains the capacity for sustained performance of the

physical-mental requirements of jobs."  20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c).  It is

essentially a determination of what the claimant can still do despite her physical, mental, and other

limitations. *See* 20 C.F.R. § 404.1545(a). "In determining a claimant's RFC, an ALJ must consider

all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the

effects of symptoms, including pain, that are reasonably attributed to a medically determinable

impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal citations

and quotation marks omitted).

The ALJ found that Plaintiff had the "residual functional capacity to perform light work[.]" (AR 26.)  The RFC determination cannot be sustained on this record because it fails to consider the opinions of Dr. Trinh and Dr. James regarding Plaintiff's PTSD and the work-related limitations it imposed.

Plaintiff self-reported an ability to do certain activities, such as "prepare[] simple meals," "shop[] twice a month for two to three hours," and "watch[] television," and told Dr. Tang she could do "volunteer accounting work at her transitional living residence and participate in AA meetings."  (AR 29-30.)  The inconsistences related to Plaintiff's self-reported activities, however, do not undermine the opinions of Dr. Trinh and Dr. James that Plaintiff suffered marked limitations in her ability to complete work-related activities, and that her PTSD-related symptoms would "preclude[] [Plaintiff] from performing her job" at least 30% of an 8-hour day.  (AR 1079.)

Because the ALJ failed to consider this relevant evidence in determining Plaintiff's RFC, the ALJ committed legal error.

## IV.    Vocational Expert's Testimony

The ALJ was required to address all of Plaintiff's limitations, including her limitations in concentration, persistence and pace in the RFC and hypothetical to the vocational expert.  *See Magallanes v. Bowen*, F. 2d 747, 756 (9th Cir. 1989); 20 C.F.R. § 416.945; *see also Lubin v. Comm'n of Social Sec. Admin.*, 507 Fed. Appx. 709, 712 (9th Cir. Feb. 8, 2013) ("The ALJ must include all restrictions in the residual functional capacity determination and the hypothetical question posed to the vocational expert, including moderate limitations in concentration, persistence, or pace.").  The ALJ, however, failed to do so.  (AR 70-74.)  The ALJ's questions emphasized Plaintiff's physical abilities and ambulation.  (*Id.*)  While the ALJ asked hypothetical questions regarding an individual who cannot "perform tasks which demand concentration on details" and would "occasionally isolate . . . from [coworkers]," these may not fully and accurately reflect Plaintiff's limitations given the ALJ's failure to properly weigh the opinions of Dr. Trinh and Dr. James.  *See Hill v. Astrue*, 698 F. 3d 1153, 1162 (9th Cir. 2012) ("If a vocational expert's hypothetical does not reflect all of the limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1  However, upon examination by Plaintiff's attorney, the VE testified that a hypothetical individual

2  suffering from difficulties in concentration, persistence, and pace, as well as an "inability to

3  remember instructions 15 percent of the time," would have had their past work been made

4  "unavailable." (AR 74-75.)

5      In sum, the ALJ erred by not posing a hypothetical to the VE that considered Plaintiff's

6  full limitations. Notably, however, the VE indicated that these limitations would "prevent [an]

7  individual from performing past work." (AR 75.) Taking the VE's answers to hypothetical

8  questions that accurately reflect Plaintiff's limitations, the ALJ should have applied the Medical-

9  Vocational Guideline 202.04/202.06 because Plaintiff was not capable of performing past work.

10 *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a) (stating the Medical Vocational Guidelines

11 apply in cases where an "individual's impairment(s) prevents the performance of his or her

12 vocationally relevant past work.").

## V.    Remand

14     The Court now addresses the question of whether to remand this case to the SSA for

15 further administrative proceedings or with instructions to award benefits. A district court may

16 "revers[e] the decision of the Commissioner of Social Security, with or without remanding the

17 cause for a rehearing," *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir.

18 2014) (citing 42 U.S.C. § 405(g)) (alteration in original), but "the proper course, except in rare

19 circumstances, is to remand to the agency for additional investigation or explanation." *Id.*

20 (citation omitted).

21     A district court is precluded from "remanding a case for an award of benefits unless certain

22 prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal citations

23 and quotations omitted). "The district court must first determine that the ALJ made a legal error,

24 such as failing to provide legally sufficient reasons for rejecting evidence." *Id.* (citation omitted).

25 "If the court finds such an error, it must next review the record as a whole and determine whether

26 it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have

27 been resolved." *Id.* (internal quotation marks and citation omitted). Where the record has been so

28 developed, "the district court must consider the testimony or opinion that the ALJ improperly

1   rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would

2   necessarily have to conclude that the claimant were disabled if that testimony or opinion were

3   deemed true." *Id.* If the answer is yes, "the district court may exercise its discretion to remand the

4   case for an award of benefits." *Id.* Each part of this three-part standard must be satisfied for the

5   court to remand for an award of benefits. *Id.* "It is the 'unusual case' that meets this standard."

6   *Williams v. Colvin*, 24 F. Supp. 3d 901, 919 (N.D. Cal. 2014) (citation omitted).

7         Notably, district courts retain "'flexibility' in determining the appropriate remedy[.]"

8   *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

9   Specifically, the court "may remand on an open record for further proceedings when the record as

10  a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of

11  the Social Security Act." *Id.* (internal quotation and citation omitted). In addition, "[i]f additional

12  proceedings can remedy defects in the original administrative proceedings," the case should be

13  remanded. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

14        Applying these principles here, the Court's concludes the ALJ erred in: discrediting the

15  medical opinion evidence of Dr. Trinh and Dr. James without specific or legitimate reasons; not

16  fully considering medical opinion evidence of Plaintiff's PTSD when evaluating whether she had

17  a severe medically determinable mental or physical impairment; failing to properly evaluate

18  medical opinion evidence in determining that Plaintiff did not satisfy the limitations under Listings

19  12.04, 12.05, 12.06, and 12.15; failing to consider relevant evidence in determining Plaintiff's

20  RFC; and not addressing all of Plaintiff's limitations with the VE. These errors meet the threshold

21  requirement of legal error.

22        The next question is whether the record has been fully developed and further

23  administrative proceedings would serve no useful purpose. *See Dominguez*, 808 F.3d at 407

24  ("Unless the district court concludes that further administrative proceedings would serve no useful

25  purpose, it may not remand with a direction to provide benefits."). Here, Drs. Trinh and James,

26  whose opinions the ALJ erred in discrediting, both opined that Plaintiff had work-related and

27  psychologically-based functional limitations that would cause her to be "off-task" for at least or

28  "[m]ore than 30%" of "an 8-hour work day." (AR 1076-77; 1092-97.) But the record leaves open

*United States District Court*
*Northern District of California*

24

the question of Plaintiff's exact disability status, as there are some inconsistencies between the opinions of Drs. Trinh and James and how nonetheless Dr. Trinh stated in Plaintiff's September 2017 mental health questionnaire that she was responding "very well to treatment" for her PTSD, and that treatment notes dated August 8, 2017 from West Oakland Health Counsel state Plaintiff was doing "very well in school."  (AR 1092; 1231-32.)  While the ALJ erroneously did not consider Dr. Trinh's "overall diagnostic picture" of Plaintiff's mental health, *see Holohan*, 246 F.3d at 1205, these are two such "inconsistencies, conflicts, or gaps in the record[,]" *Dominguez*, 808 F.3d at 410, that further administrative proceedings could address and for which they would serve a useful purpose.  Accordingly, the Court does not proceed to the next question of whether the ALJ would be required to find Plaintiff disabled if the treating physicians' opinions were taken as true.  *Id.*  The Court will therefore remand this case to the ALJ for further proceedings rather than payment of benefits.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's cross-motion, and REMANDS for reconsideration consistent with this Order.

This Order disposes of Docket Nos. 16 and 17.

**IT IS SO ORDERED.**

Dated: July 23, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge